Good morning, owners. I reserve two minutes for rebuttal. Will you not keep an eye on our clock in front of you? We've got a lesson left to do. Yes, sir. Thank you. May it please the court, my name is Joshua Barney. I'm here for petitioner research. I'm a lawyer. The record provides three independent bases, each of which independently provides a reason to remand the case. Okay. Cumulatively, it entails a remand. Okay. The first is that the immigration judge in court immigration appeals failed to properly consider Mr. Dong's well-founded fear of future persecution. The second is that the negative liability determination was unsupported by the record. And the third is that the immigration judge failed to consider the corroborative material provided by Mr. Dong, which he is assuming that his testimony was not credible, which independently established his claim. Well, I'd like to start with the well-founded failure to consider the well-founded fear of future persecution, which the lawyer believed provides. Does that hinge on the second and third? I mean, it's certainly not independent. If you took the other story, respectfully, no, Your Honor, because an individual can establish asylum eligibility for someone when there are two ways. The first is to establish past persecution, which gives rise to a presumption of a well-founded fear. The second is even independent of past persecution. So if he's got to make an incredibility finding and just cast into question everything that he said? Except the immigration judge on page 134 of your record explicitly found the testimony of Mr. Dong's pastor to be credible. And the immigration judge explicitly accepted the fact that Mr. Dong is a practicing Christian, that he was baptized here in the United States, and that he attends church every single week. That's all? He's a Christian? Correct, Your Honor. But again, we're back to what Judge Bybee asked you with the bad credibility finding as to what he testified in the court. Why do we need to even discuss future? Because whatever he said or didn't say about future is not credible? He was assuming that his claim of past persecution. Because there's just nothing here. There's no independent evidence that's independent of his testimony, which helps you. There's nothing that is in this record to help him other than his own testimony, and he's already incredible. So that's why I think, Judge, because his question is very important. We better go with the credibility to determine what to do. Now, if we go with the credibility, you realize this is a Real ID Act, right? Yes, Your Honor. And with the Real ID Act, if you have a minor inconsistency, it's enough, right? Yes, Your Honor. It doesn't have to be anything but minor. If we weren't in the Real ID Act, it would be different. I absolutely agree, Your Honor. Oh, why don't you explain this, how we can get by that stuff with the baton? Well, any inconsistency alleged must still be grounded in the record. And the point is that the inconsistency alleged by the immigration judge, in fact, didn't exist. The immigration judge can't use characterized testimony under the Real ID Act. In fact, the Real ID Act, 1158, explicitly requires the immigration judge. But he's gotten pretty clear. He's gotten pretty clear evidence of the inconsistency as to the nature of the baton, and how it was used by the police in his requirement. I especially disagree with the immigration judge. The fact that in the immigration judge's characterization, in his written testimony, in his written statement, he indicated he was shocked by an electrical baton. He never stated that he was shocked by an electrical baton. He merely stated in the written translation of his written statement that it was characterized as an electrical baton, but never said that he was shocked.  And, in fact, you're grounded, Your Honor. I'll never even suggest that there was any translation error when he was confronted. And he initially denied even writing that there was an electric baton. And after they had a continued hearing, he went back to the Internet and read what it said. And at that point, he tried to change it and say, yeah, it was an electrical baton. But, again, that, to me, is absolute inconsistency and not minor, because now we're really talking about the extent of his injuries. But the key here, although it was not that it was just merely a difference between being struck by a baton or an electrical baton, it was that the immigration judge characterized it and explicitly said that Mr. Dunn claimed he was shocked by the electrical baton. So you're suggesting he can say it was an electric baton and that wasn't the way it was, but thereafter go look at the Internet and come back and say, no, I made a mistake. It was an electrical baton. And that's not a minor inconsistency. But that's not what the immigration judge found, again. No, that's exactly what your client did. I understand that. In my book, that's exactly what D.I.J. was talking about. That's not what D.I.J. said, Your Honor, and I don't think that my client might have thought of it. Actually, if you want to point to a specific language. The specific language is on page 120 of the record where the immigration judge explicitly says, if Mr. Dunn had, in fact, been shocked with an electric baton, this would have been a notable aspect of his prosecution. Thus, the court finds the use of the word electrical baton even significant. He didn't say the dumb thing, he was shocked. What you just read us said if he had been shocked, this would have been a substantial step in proving and finding his burden. The use of the conditional by the immigration judge is to cast doubt on Mr. Dunn's claim that he was shocked. In fact, he never claimed that. Where did the I.J. say that Dunn said he was shocked? We brought out that quote where he's saying if he were actually shocked, this would be significant. That's not a finding that Dunn said he was shocked. I believe it is a finding, and I respectfully refer to it as a finding that Mr. Dunn usually claims to have been shocked, and that's why it's casting doubt on his testimony. You can also note a couple of other points on that. Let me make sure I understand it. Your position, your and I.J.'s decision as having attributed it to your clients, explained that he was shocked. Yes, sir. We may or may not agree with that. If we disagree with that, if we think that, in fact, I.J. does not attribute that to your clients, he nevertheless says, I see a difference between an icy baton and a legal baton. Do you take issue with that? I would still assert that there are sufficient grounds to remand him, even if the court disagrees with my interpretation of the immigration judge's decision. It's not the theory that if he gets hit over the head, it doesn't matter what instrument he's capable of shocking as well. Precisely, Your Honor. And the other point is, as it was raised earlier, that we're not just relying on his testimony. So even if we can say that there are minor inconsistencies that require rehabilitation, the key is that there was independent evidence admitted into evidence not objected to by the government. Immigration didn't consider, and most importantly, the contemporaneous medical records, which detail from the doctor that he went to after he was mistreated by the police, where the doctor himself reports what Mr. Newman was indicating, which is that he was, and he reported to the doctor that he was competing with Mr. Newman. The doctor reported multiple contusions all over his body, dry blood on his body, dry blood on his clothing. This was independent, contemporaneous corroborative material that matches with what Mr. Newman was describing in his testimony. And the immigration judge's failure to consider that independent evidence, literally does not even make a mention of this evidence other than saying they've considered all of the evidence. And while a successful approval of the immigration judge is not required to parse through every piece of evidence, where this very specific relative to admitted evidence was not even mentioned, discussed, or in any way reconciled with the immigration judge's finding, on that basis, even if we have lingering doubts about whether or not Mr. Dunn was inconsistent, the question remains as to whether this independent evidence rehabilitates. Otherwise, there remains insistent testimony. And we've taken you down to one minute, but maybe you ought to speak to monitoring, because I think monitoring is deeply, deeply tough work for you. Yes, sir. Did you have a specific question? No, I just, I mean, I've read your argument, but I don't know how that really helps you. I mean, in my book, I'm just trying to let you explain, because in my book, there's an inconsistency that's pretty relevant. Mr. Dunn appeared to simply embellish his claim on the spot as to the progression and proves by substantial evidence that there's an adverse credibility finding. There's nothing to prohibit an Islamic applicant to expand upon his written statement. Well, nothing is forbidden to be expanded, but if it has nothing to do with what really happened, then you can make it an adverse credibility finding. And when it's minor inconsistency, there we are. And I would respectfully assert that, first, because the immigration judge said the most significant factor was the electrical baton issue, and the evidence corroborates his claim that if we eliminate Dunn, if we scrub that error from the judge's finding, we don't know whether or not the monitoring issue would be sufficient for negative credibility determination. And secondly, I would just state with respect to that issue, Your Honor, that this is not an inconsistency. Yes, this was something that— The progression from simply being asked what he was doing, being threatened by the same officer that beat him previously, and noted that Dunn appeared simply embellishing his claim, that's a little bit better than passing it by. Yes, Your Honor. With the, first of all, hanging statement, he says he was monitored and harassed by the officials. I would also note that Mr. Dunn's mother's letter indicates that he was, in fact, followed and harassed and bothered by the officials. And there are vague references. And absolutely, I'm not going to stand here and claim that he provided that specific detail that he did provide during his testimony, but the record doesn't reflect that. But what it does reflect is he provided vague, general details about this monitoring and then elaborated on those details when he was given the opportunity to testify in detail. Okay, thank you. We'll see if I can get one. Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court. Alexander Lynch, the respondent. Your Honors, this record would not compel any reasonable fact finder to conclude that Mr. Dunn provided credible testimony for reasons that Your Honors already touched on in your questioning of Petitioner's Counsel. We've got an inconsistency about Baton v. Electric Baton. I think you're in a position that Mr. Dunn claims he was shocked by the Baton. Your Honor, I don't think Mr. Dunn necessarily said he was shocked by the Baton. We read the language that Mr. Dunn's counsel just addressed on page 120 of the record as saying that this is a significant inconsistency because if he had been shocked through the record, that that would be a significant detail of his testimony. That's right. He doesn't seem to have been shocked. So I'm not sure why it matters if you get hit over the head, whether you get hit over the head by a micro baton or an electric baton. I mean, you know, it's not the kind of detail that you would necessarily remember. The officers carry something and hit you over the head with it. If you get shocked and you say, well, you know, it was a micro baton, I'm not shocked, but I don't quite understand why this matters, why the particular use. Like he said, this one was in Chinese for the baton, electric baton. Is there one that he gathered from the record? Your Honor, the record does contain evidence from a sworn immigration court interpreter who said there was no ambiguity as to Mr. Dunn's use of the word micro. But in response to the general judge. Well, no, I understand. I gather there are different words in Chinese for a regular baton, an electric baton. It sounds like in English where you have to add a modified baton and call it an electric baton. It's just different words for the verb. So it's not like you have to add a word and say, oh, it's an electric baton. Well, I gather there are different words, and he used one of the words, and I'm not sure what significance there is, whether it was electric or it wasn't electric, or whether we know whether it was electric or not. The consequence was that he was hit over the head, or that's what he claims. Well, Your Honor, I suppose I'd make two points in response to your question. The first is that the immigration judge's finding to do with the electric baton as adopted by the court didn't just have to do with the basic distinction between two different implements. It had to do with Mr. Dong's shifting, conflicting explanation for that inconsistency. What the immigration judge noted at this point, Mr. Dong testified that he did write electrical, that he didn't write electrical, that he didn't know whether the baton was electrical because he didn't see it, that he put electrical because he thought they were the same thing, and that he put electrical because his computer prompted him to do it when he was writing the declaration. That's part of the immigration judge's finding on this issue, and that's part of the finding the court adopted. But even if we set all that aside, we still have the entire separate inconsistency where Mr. Dong added in his cross-examination testimony an entirely new claim about being threatened face-to-face with death in an alley by a Chinese police officer, and that claim was completely absent from his written submissions. What about the doctor's evidence that he came in bloodied and bruised and told a story about being hit by a baton? Well, Your Honor, we would respectfully suggest that that's not enough to corroborate Mr. Dong's testimony. It's certainly not. It doesn't even match. It's sort of like not fair. He's predestined everything, doesn't he? There's a third party who provides evidence that in fact he comes in bloodied. What's the idea here? Does he fall down the stairs? Well, Your Honor, I guess there's two issues. Your question touches on one is the significance of this document, and the other has to do with the point Mr. Dong is making now about whether the agency sufficiently dealt with the document. So as to the first point, you point out that this hospital report just shows that he was beaten, that he has injuries consistent with being beaten. That alone doesn't corroborate the whole scope of Mr. Dong's claim, that he was a member of an underground house church, was detained on that basis, and was beaten and forced to write a confession letter. That has nothing to do at all with the second and third instances of persecution that he alleges. As to why the agency erred in its treatment of this evidence, we would respectfully submit that the record does not compel that conclusion. Mr. Dong's counsel just a few moments ago conceded that the agency is not required to specifically step through each item of evidence and explain how much weight it gave to it. This court said that in Galey, which is a case we cited in our brief. Well, but the agency essentially seems to have concluded that Mr. Dong fabricated the incident about being hit on the head. It seems to me that a piece of evidence shows that he is in the hospital and he's bloodied, and that he talks about being hit. I mean, that's pretty significant stuff to just throw it beneath the sun. It's not just, I mean, I have no idea what the I.J. thought. What's the court's take? What's the court's view? It's a little hard to understand. Well, Your Honor, we would respectfully suggest that the agency did ignore this evidence. They just declined to specifically mention it in their decisions as they were going through several options. I mean, he has a hospital before this. He comes in bloody and so on. And it seems to me it makes it less of an idea that he's lying about being hit with a baton and bruised. At the same time, on the same day, he comes in to the hospital with a weapon. It makes the question whether someone was hit with a baton or a regular baton seem so trivial by comparison. Well, Your Honor, I just circle back to my earlier comment that this document alone just shows that Mr. Donnelly may have been beaten. It doesn't support his entire claim. He needs more than just having been beaten to show a— So the theory is that he got into a fight in a bar and decided that he isn't, as an excuse, pursuing the police. Is that what you're saying? I see right there on the spot when he walks into the hospital, he tells them one story, which he sort of concocted, anticipating you would give a file and he would take a file in the United States. Well, Your Honor, I don't think we need to go that far. I think the only inter— Oh, I'm going to make you go to the front. That's what I'm saying. Yeah, I know you don't want to go there, but nevertheless, what's your answer to my question? I mean, what's the worst, you know? So he gets into a fight in a bar and decides, oh boy, this is a good chance for me to go to a hospital, plain to be honest, with the police, so that I can raise this immigration case, when he has made it in the United States, and claim persecution. Is that the theory? If that's what you're talking about? No, Your Honor, that's not my position. The FAMC's record wouldn't support that. Our point is just— You think he's using the piece of evidence to stab my man? No, Your Honor, we're not necessarily saying that. Either our point is just that this item of evidence alone would not— No, but we as a court, necessarily, as one of the six Muslim men in the law school, are you saying it is? Are you saying it isn't? I mean, what is the governor's position? You know, he has a piece of evidence that he was, in fact, treated for what seemed to be injuries, the result of a beating. There has to be some explanation. I mean, what's the governor's position? Is that fabricated? If it's not fabricated, how does it fit into the story? Your Honor, I don't have a position on whether the document was fabricated or not, because the issue before this court is whether this record would compel any reasonable fact finder to conclude that Mr. Dong testified credibly or sufficiently corroborated his claims such that he made out a claim for asylum. And this one document does not carry that burden. Even if we set this whole issue aside about whether he was beaten or not, with one implement, we still have the inconsistency. So you say you set it aside, but you can't just set it aside. You know, you can set it aside and say, well, believe him, he was, in fact, beaten by the police. You want to do that, that's fine. But you can't just stick a door in and say it doesn't exist. Certainly I understand Your Honor's point. So are you willing to say, okay, even assuming that he, in fact, was beaten by the police, he reports, it doesn't matter? Is that what you wanted to say? No, Your Honor. What we're saying is that even if this document works through So you agree that this document is true and, in fact, his story about being beaten by the police in an alley is true, then the IJ's conclusion would not be supported by it. No, Your Honor, I didn't say that. Okay, so let's assume that it is true. In fact, he was, in fact, beaten by the police. Because you're not willing to assume otherwise. So let's assume that, in fact, it happens. So this is a guy who gets beaten by the police in an alley, comes to the hospital, and says, I can't believe I'm doing this, and says, I've been beaten by the police. Well, Your Honor, we'll take it from there. Well, Your Honor, to please the Court, I feel that I must clarify a couple of points about what the record says. In my experience, I should say to you, sir, you know, I'm not sure I understand your position. You can't sit there and say, you can't ignore it. You must either assume it happened or assume it didn't happen. So which one do you want to assume? You want to assume, because you say, even without this, he loses. Okay? So if you want to make that kind of argument, even without this, even if we ignore this problem, he loses, we have to make some assumption about what it is. So the only way you can go on to your argument that he loses anyway is by assuming that this one, he wins on this one. Are you making the argument that the more you assume that he wins on this one, the NIJ is defying you as a court? Your Honor, I'm not making precisely that point. And I feel I must clarify what the document actually says in order for my position to make sense. What do you mean you said even if? So you are taking back the even if? Which I fully know, Your Honor, and I just want to clarify what this document says. The document says that Mr. Dawson had injuries consistent with having been beaten. The document is dated July 15, 2009, and says he claimed to have been beaten two days before that. So the reason I wanted to clarify that is that Your Honor's question suggested this document related to the incident where he claimed to have been beaten in an alley. That's not what the document says. The document arguably pertains to the first incident where he claims he was detained and beaten. And all it shows is that in some time, roughly consistent. So this is not the Bataan incident? It is the Bataan incident, but that's a separate incident. This is three incidents total. The first one is where he claims to have been detained while attending the First House church of which he claims to have been a member. He was taken into detention for three days, and during that detention was beaten with either a baton or electric baton. We don't know because he's inconsistent on that point. The second incident is the one that he revealed for the first time in his testimony and upon cross-examination and had never mentioned before in any submissions or direct testimony. In that incident, he claimed that he was confronted in an alley by one of the police officers who had previously beat him in the first incident and that that police officer grabbed him by the collar, threatened him with a baton, and said, if I catch you attending the house church again, I'll beat you to death. So that's the second incident, and that's the one that appears for the first time on cross-examination. And in the third incident, months later, he's joined a second house church, he claims. He's handing out pamphlets in the street with two members of that congregation. The police see him from a little ways away in the street and publicly shout, stop right there or we'll beat you to death. And he sees it, hiding with his arms, and ultimately winds up turning to the United States. The document that Your Honor is talking about is a hospital report that says that sometime roughly consistent with that first incident, he checked into a hospital and showed symptoms that were consistent with having been beaten and claimed he was beaten two days earlier. And that's all that document says. So this is my point. If we accept that document is true, all it does is show that he was beaten around that time as his claim of this first incident. But just that point, just that fact alone, wouldn't compel a reasonable fact finder to reverse the agency's decision here, partly because the document doesn't go far enough to corroborate his claim. It doesn't say anything about his religion, about attending a house church, about his story about being forced to write a repentance letter. Well, it does corroborate the aspect of the story that says that he was beaten by the police. It says that he comes in with symptoms of being beaten. It doesn't mention the police, Your Honor, but Your Honor is correct that it does suggest that he was beaten. And my point is twofold. First, do you think this is something that the I.J. managed to deal with? I think the I.J. did deal with it, Your Honor. I think the I.J. said he considered all the evidence, and that's all that's required. And I think the board adopted the immigration judge's findings were too reasonable. I'd also point out that Mr. Dong didn't raise that item of evidence to the board. He did say to the board that the immigration judge had failed to consider all the evidence, but the only evidence he told the board to look at when he made that assertion, and I'm referring here to pages 91 to 92. But it's okay for the I.J. to say, I've considered all the evidence, my father came, Mr. Dong's okay, so then that works equally. He needs to be more specific than the I.J. Well, Your Honor, yes, I think he does, because there's a precedent from his court that says that the agency is presumed to have considered all the evidence, especially when the agency says, I've considered all the evidence, which is what the agency did here. Mr. Dong told the board that the immigration judge hadn't considered all the evidence, but what he asked the board to look at was the fact that he had an injury on his arm. Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. You know, at the time as well, we felt like we had to move on. I agree with you, Your Honor. With respect to the medical report, not specifying that he was beaten by the police, rather just that he came in and indicated that he was beaten two days before, that's by another piece of evidence that was not mentioned by the immigration judge. It's also a key in that's on page 487 and 488, which is the bail received through administrative detention, reflecting dates that match the medical report, reflecting the testimony, there's a bail received from administrative detention on page 487 and 488, which we also highlight in our brief that the immigration judge failed to consider. You said bail, is it? Yes. Mr. Dong testified that he was required to make this comment in order to be released from administrative detention, and this receipt was not in any way discussed or mentioned by the agency as we raised in our brief, and when you combine these two pieces of evidence, we're not asking this court to reach a determination that in fact Mr. Dong met his burden of proof. What we're asking for from this court is simply a finding that the agency needs to reconcile its negative credibility determination with these two pieces of evidence, and without it we don't have a complete agency decision on which thing to review, because the agency is required to consider this thing. Thank you very much. Thank you.
judges: Kozinski, Bybee, N.R. Smith